Good morning to the court. My name is Lauren Cusatello. I am proud to represent Ms. Lina Gomez Parra, the petitioner in this case, and I would like to reserve three minutes for rebuttal. Before Ms. Gomez was required to represent herself at a trial inside the Adelanto Detention Center on the merits of her applications for asylum, withholding of removal, and protection under the Convention Against Torture, she was not asked if she wanted to proceed without counsel. She did not give an affirmative response to the question she was not asked. In fact, she came that day with evidence indicating she had an attorney, an attorney who had already represented her before the court in Blanche proceedings. The government indicated that evidence that had been shared with it indicated that that attorney believed that she was representing Ms. Gomez, and yet the Board of Immigration Appeals, the immigration judge— Sorry, could you just clarify, what was the evidence that the lawyer thought she was still—she, I guess you said, was still representing your client? There was a letter in the record. There is a letter in the record that is discussed on the record as well, and that's at page 308. The letter itself is on page 308 of the administrative record. But the government as well indicates during that discussion that there are emails that have been handed to the government indicating that the lawyer who represented Ms. Gomez at the bond proceedings believed that she was still representing Ms. Gomez, which is also what Ms. Gomez was representing to the court at the beginning of the hearing. But there wasn't a notice of appearance, and that's where the confusion came? We can all assume that there was for the purposes of bond proceedings because at a prior hearing, the court had confirmed that bond had in fact been set, meaning that there was a hearing. Nobody disputed that she was represented by counsel at that hearing, and given the rules of the immigration court, we can only assume that what happened is that this attorney entered a limited appearance, which is not something that necessarily would have been known to Ms. Gomez because she's not required to sign the form that the attorney is required to submit. And it was explained to her at this hearing as well as at the prior hearing that had been continued that bond proceedings are separate under the rules of immigration court from the primary removal proceedings. But Ms. Gomez believed herself to be represented. The lawyer who had represented her in that related but separate proceeding believed that she would be representing Ms. Gomez and was attempting by providing this correspondence to Ms. Gomez to give the court information about why she was unavailable to appear, which was a medical emergency. She had been admitted to the emergency room on a prior date, and rather than inquire into the availability of this attorney, the court and the government insisted on the formal requirement of a notice to appear indicating appearance for the removal proceedings as well as the custody proceedings. And that insistence on that formal requirement cannot be enough to constitute a waiver of Ms. Gomez's fundamental right to counsel, a right that this court has described as necessary, as fundamental, as central to due process. There is nothing in the record to indicate that on the day of her trial, on the day that the court made determinations about things like the cognizability of the social group on which her claims were based, like her fundamental credibility in these proceedings, like the nexus between the harm and the basis for that harm. Is your theory that there was never a waiver in this case, or there was a waiver but it was revoked, or there was only a temporary waiver for the earlier proceedings but not the later ones? What do you think is the best way to understand what happened here on your theory? Our position is that the only thing that would really constitute a valid waiver was her waiver at the initial removal proceeding in February. And do you think that then was a waiver that continued forward, or it was only a waiver for that day? I don't think it's necessary to answer the question, but if forced to, my answer would be she was never given the same information that she was on the first day. At subsequent hearings, the question that was asked was, do you wish to continue without counsel or continue to represent yourself, as opposed to reasserting that she has a right and explaining the importance of that right? And I think central to the court's question is the way that the court treated the right to counsel throughout the proceedings. Because of, at that time, the existence of a legal orientation program inside the Adelanto Detention Center, Judge Penaloza, who presided over most of the proceedings in this case, continually referred Ms. Gomez back to what he and most people refer to just as LOP and had them do things like help her prepare her asylum application, translate documents that had arrived from Colombia. What I'm trying to understand is, I think if there was a proper waiver at the beginning of the proceedings, it could carry forward through the later hearings also, as long as there wasn't a revocation. But maybe your theory is that it doesn't carry forward. Is it because on that day that I.J. said, what would you like to do today? I mean, is it something about the wording of that that you think makes it not carry forward? Or are you saying – I'm still not quite sure if you're saying that the waiver at the beginning can't carry forward to the later hearings, and if not, why? All right. I'll answer the question in two parts. First, can the initial waiver be considered a waiver for all purposes? Under the right circumstances, it could. It is, I think, a fact-dependent inquiry. In this case, the way that it was framed at the initial hearing and the way it was framed at subsequent hearings was whether Ms. Gomez was going to represent herself that day. And we didn't address in briefing throughout the case the validity of that initial waiver, in part because it was so clear later in the proceedings that she did wish to be represented by counsel. And although. Are you contesting the validity of the initial 2019 initial hearing waiver of counsel? I don't believe that it was a knowing waiver, in part based on the focus on hiring an attorney. I don't think it was fully understood by Ms. Gomez that she could obtain free counsel, which is ultimately what she did months later. Because if I understand your argument today, the words that you're focusing on at the later hearing, the final hearing, is that are you going to continue to represent yourself today? And you are arguing, I think, that implicit in that question is sort of the earlier waiver is being imputed into the question for the later hearing. And so I have the same question Judge Friedland does, which is, is it just that there wasn't a new admonition about what is required to waive the right to counsel and that she has the right not to have counsel? Is that the issue or is it the fact that you're contesting the earlier waiver and the validity of that waiver such that the question is improper because it says that you're continuing to represent yourself today and sort of just imputing that into the question? Which is it? I think it's a third thing, that by the time of the individual hearing, which was rescheduled from a prior date, at the prior date as well as the date where the hearing ultimately took place, there was a revocation of any prior waiver. And for that reason, the validity of any prior waiver is not material to the ultimate question of whether Ms. Gomez waived at trial because she didn't. And so, okay, so then if it's a revocation, was it as clear as it needed to be to count as a revocation? Because she didn't – she said she thought she had a lawyer, but then she agreed to just continue without much objection. So how do we know that it's a clear enough revocation? Well, I mean, again, this court is asking to import this new concept of revoking a prior waiver into the law around the issue of the right to counsel. If the court elects to do that, the question, I suppose, would become the following logical next question is how clear does the revocation need to be? Does it have to be as clear as the initial waiver is required to be? Is your argument that just by hiring counsel that is enough and that there doesn't need to be any other express statement? And in fact, if an express statement is contrary to the act of hiring counsel, that doesn't constitute a revocation or does constitute a revocation? Well, an illustration of that point would be if this attorney had entered the notice of appearance that the court was seeking, a notice of appearance that reflected representation for removal proceedings as well as custody proceedings, if the attorney had done that and Ms. Gomez had come with a letter indicating the lawyer's medical unavailability and indicated this person said they were going to continue to represent me, that I believe would be enough to make clear to the court that any prior waiver of counsel had been revoked. But here, the only reason we're here in our position is the only reason we're here is because of the lawyer's failure to indicate on the record that she was representing Ms. Gomez, not just for custody proceedings, but also for the full scale removal proceeding, which could have happened for any number of reasons, including the fact that when people are released from custody, venue of the proceedings often changes, and that affects whether someone will continue to represent a person if they relocate outside of especially a pro bono organization's area of work. I mean, this record doesn't actually definitively tell us that she had a lawyer who had agreed to take on the full case. The record doesn't show that in the lawyer's words, in part because the notice of appearance for custody proceedings is not part of this record. But Ms. Gomez... But do you know why? I mean, so that custody proceeding was early December. The actual merits decision in this proceeding in this case was late February. So it's not as if, you know, the agency was railroading this through and it was just a matter of days. That's quite a bit of time. So if this lawyer was really on board for doing the whole proceeding, do you know why there was no indication for the immigration court to realize that there was a lawyer here? Well, it stems from the fact that the proceedings are separate, that they're contained in separate files, that other than Mrs. Gomez... In the merits part of the proceeding, even without a hearing being... They can do that outside of a hearing, right? They can just file a piece of paper in that case that says I'm indicating my notice of appearance? Absolutely. But unlike other actions that are attributed to an applicant, like failure to submit an application by a deadline that even a represented person is held accountable if they fail to meet that deadline, a represented person cannot file a notice of appearance for counsel. Only counsel can do that for themselves. But my question is, I mean, I understand this is out of the record, but I'm just... It's very curious to me if she did have somebody who wanted to represent her or who was willing to represent her and she wanted that to be the case. And I know that there was some indication maybe the lawyer was sick or something, but there was a span of time when it could have been made very clear to the court that there was a lawyer on this case. And then the immigration judge could have made decisions with that understanding. Instead, the immigration judge at every single proceeding has no lawyer and is having a continuing conversation with your client saying, like, we've got to get this done at some point. We've got to be able to move. You've got to have an attorney or you're going to have to do it by yourself. Like, that is an ongoing conversation at every stage. So it's very hard for me to think that we're going to blame the immigration court for not doing this properly when it was never made clear to the court that there was a lawyer here. Ms. Gomez had asserted the same information at the hearing that was rescheduled to the date where the ultimate hearing took place. The court was aware. And, again, unlike many of the other admonitions that the court gave throughout the proceedings, the court did not indicate to Ms. Gomez that the lawyer needed to file a separate notice of appearance. The court said, we don't have a notice of appearance. And she said, I was represented at the bond hearing, and the lawyer said they would continue to represent me. And the judge did not explain to Ms. Gomez what the lawyer needed to do. So there was nothing she could do to effectuate that intention to be represented by counsel. There was nothing she was aware of. And with that, I will reserve the rest of my time. Thank you.  Good morning, Your Honors. May it please the court? Sana Lee representing the Attorney General. Your Honors, in this case, the agency reasonably determined that the petitioner waived her right to counsel, where the petitioner never had an attorney who, as you've pointed out, filed an appearance in the removal proceedings. There was this other attorney who helped her out with the bond proceedings. But as the two different, I think, three different immigration judges told her that the bond proceedings were separate and had nothing to do with the removal proceedings. So why did that lawyer file the letter about being sick in this proceeding, then? Am I right that it was filed in this proceeding? Well, I don't – there was a letter regarding an attorney who was unavailable for the week of January 20th, which it seems that that could have been related to her bond proceedings. But Ms. Gomez-Para submitted the medical excuse from the lawyer at the hearing in front of the immigration judge, not as part of the bond proceeding. So doesn't that suggest that she may have secured counsel, but her counsel was unavailable for the hearing? Well, the – no, Your Honor. The letter discusses the week of January 20th, so that is not the date of her merits hearing, which occurred on February 27th. So the medical excuse was not about that merits hearing. It was about a different hearing. But I guess the question is why would that letter have been filed in the removal proceeding if that lawyer wasn't involved in the removal proceeding? The evidence or the record shows that the petitioner seemed to be – maybe she was confused about what that attorney was doing for her. And she – the – you know, she mentioned the attorney and she brought up the bond proceedings in a couple of different removal hearings. And the IJs kept pointing out, well, those are separate. So, you know, that's just a different proceeding. And it appears that she may have been confused about what this attorney was going to do for her. But that doesn't show that – why do we assume that she was confused about what the attorney was going to do for her? I'm looking at AR-157. And there she explained that she was told that this person was going to be her attorney and will represent her, and that the Pro Bono organization told Ms. Gomez-Para that the attorney will represent her and will be at the hearing to represent her. So I guess what I'm wondering is – I understand your argument, which is that because there was no notice of appearance, a formal notice of appearance filed in this proceeding, we know that she wasn't, in fact, represented by counsel. There was no attorney that appeared. But she's making these representations that she believes that the same lawyer who represented her in the bond hearing is going to represent her. She's expressing that. This letter, the medical excuse letter, is filed in this case. So why do we accept the interpretation or the argument that you're making, which is that she was confused, there was no lawyer representing her, and she didn't know what she was talking about when she's making these representations multiple times? Well, OK, so going to AR-157, the petitioner says to the immigration judge, this attorney helped me on December 5th, which was the bond hearing, and she said from there on out she was going to be my attorney. And that seems to say that – And it goes on to say, I've spoken to the organization, and they say that the attorney will represent me and she will be here to represent me. And I still think that that – what she's saying there shows that she thinks that the attorney is going to – OK, that she's not sure. But the organization and the attorney told her that they would represent her in the bond hearings, but it seems that she may be mixed up about, well, why isn't that attorney here at this removal hearing, even though it was only for representation for the bond proceedings? What is your argument to the point that your friend on the other side made, that this constitutes a revocation of a prior waiver of counsel that was made? Because I think that there's a pretty strong argument that at some point she waived her right to counsel. There was a very direct question about whether or not she intends to proceed without a lawyer, and she answered in the affirmative. So what do you say in response to the argument that there was a revocation? This was not a revocation, Your Honor. What's the standard that we should apply for what constitutes a valid revocation of a prior waiver? A standard as far as – What needs to be said? Are there magic words? What are we looking for to know whether it's a valid revocation? Well, I think it needs to be clear enough that the IJ knows that she wants to go forward with an attorney. Well, isn't that what she's saying on page 157? No, Your Honor. In the government's view, it was not clear here that she wanted to go forward with an attorney. She thinks that this attorney is going to show up at this hearing, but the board determined that she was confused about what the attorney was going to do for her. The board can't do fact-finding, right? So how did the board determine that? Well, because the petitioner raised this issue to the board about whether she had waived the right to counsel. Your argument seems very circular to me because if the board or the government wanted to take the position that a person doesn't know what they're talking about or they're confused or they're unfamiliar with the proceedings or unsophisticated, which is often the case with individuals in these circumstances, then it would be easy to say, we are interpreting all of these things that you're saying as just you being confused and not knowing what you want or need or think that you have. So that can't be the test for whether or not there's a valid revocation. I still haven't heard from you when you say there needs to be an express statement or there needs to be something said, and then you follow that with they need to say that they think they're represented by counsel or want to be represented by counsel. What is the test? What's the standard? Your Honor, I- And what case might we look at to help us understand what that requirement looks like? Well, I can't say exactly what that test is, and I don't believe I've seen a specific test regarding revocation in a case from this court. But I think the record here in this case shows that she did not revoke that waiver. And I think we can look at the whole course of the proceedings where she did knowingly waive that right in that very first hearing as we've discussed. Can I ask about that? Because I'm actually not totally sure that that's even right. As I read the places where she said she would proceed without counsel in the earlier discussions, in the earlier hearings, I believe all of them are framed as what do you want to do today? And if that's how they were framed, why should we assume that it's a revocation beyond that day? And you could correct me if you found one that doesn't say today, or you could explain why that doesn't hurt your argument. Well, Your Honor, going back to that very first hearing, I think it was explained to her very clearly what her rights are. That's right. But the final question was what do you want to do today, or some version of that. Yes. So what would you like to do today? In the hearings after that? I couldn't find any conversation about proceeding without counsel where there wasn't a framing of it just being for that day, except for the last one where they don't even ask. They just say we're going ahead or whatever. I mean, the last one, there isn't even a question. But in the earlier ones where there's a question, it's always what do you want to do today? Well, Your Honor, I think that we just we need to look at the whole overarching of the events that occurred throughout each of the hearings. What would happen? So let's change the facts slightly here. So in the very first hearing, the person is fully advised of their right with regard to counsel and then asked, what do you want to do? And they say, I don't want to proceed. I want a lawyer. What happens? The immigration judge would probably give a continuance for the person to find a lawyer. And then the next hearing, same situation. They don't show up with a lawyer and the person and the immigration judge says, you know, I've told you that you have the ability to have counsel. You have the right to have counsel assist you. You don't have counsel today. What do you want to do? I don't want to proceed. I want a lawyer. Then what? And then the immigration judge could offer another continuance or tell the petitioner, well, we need to go forward depending on the circumstances. So in that scenario, under our case law to satisfy due process, you either have to have a waiver of your right to have counsel assist you or the record has to demonstrate that the immigration court gave you a reasonable opportunity to have counsel and you just didn't do it. And there is no obligation for the government to provide counsel for an immigrant. And so at some point, the immigration judge is just going to have to do the proceedings, right? Correct. So it seems to me that that's the framework for this case, because as I read the record here, she always said from the beginning to the end, I want to have a lawyer. I don't know if I can get a lawyer. I probably I don't know where to find one. I don't know if I have money, whatever. But I guess I'll have to just proceed. Like she's sort of conceding to her practical limitations. But I think it's pretty clear in all of the conversations what she really wanted was to have a lawyer help her all the way through. And she just couldn't make it happen. So should we even be talking about waiver of rights and revocation of rights at all in this scenario? Or do you think that is the proper way to look at this scenario? Well, your honor, I think it's both that she did make the waiver and she may have wanted an attorney. But she I think the record shows that she knew that she couldn't get a lawyer because she didn't have the money and whatever reasons she couldn't find an attorney. And even at that very first hearing, she wanted to go forward without an attorney. And she said, yes, I'm going to go forward without the attorney. But to your other point about the continuances, that is also was also reasonable in this case, because the various immigration judges across eight months gave multiple continuances. So it seems like the agency could perhaps have viewed this case as it was appropriate to stop giving continuances. You've met the standard for denying a continuance at this point. But I don't understand the agency to have used that reasoning here. Do you think it did? Your honor? Yes. The board. I see footnote one on our five, but I read it as just saying basically because at the last hearing she agreed to proceed. We're thinking there didn't need to be a continuance rather than I think it's the is it the key factors that are usually used to look at how long is that the name of the case? We I'm not sure I'm remembering the name of the case, but there's factors that you look at for the denial of a continuance. And I don't see that are usually the factors that are looked at when a continuance is denied. Well, on on that same page, the board did determine that no additional continuances to obtain counsel were warranted. So that's at the very top of the page. And but the board did. Sorry. Could you say that again? Which page at the top of our five? But that's for the briefing schedule, right? Or. Let's see. Right. OK. The overall circumstances I see that no additional continuances were warranted. But then the footnote explains I read the footnote as explaining the reasoning and saying it's because she said this thing about proceeding rather than evaluating whether enough time had been given and whether she'd been told that she wouldn't have more time. And those kind of factors. Right. Well, the board determined that she she didn't ask for another continuance, so it didn't. Right. So we're not asking rather than than normally looking at just how much time has been given and whether it was a fair amount of time. Right. So in this case, the board was reasonably determined that there were she didn't. No more continuances were warranted because she had already received about five continuances throughout her case over eight months. And so I think that's another reason that it was reasonable for for the IJ to go forward and that her right to counsel was not violated in this case. She had many opportunities to get an attorney and, you know, for whatever reason, she couldn't afford it or maybe they were not available. She never had an attorney in these removal proceedings and the record. We have you over your time unless my colleagues have further questions. I think I need to cut you off. If you could wrap up, that'd be great. Yes, Your Honor. The record shows that she never had an attorney in this case. And and the agency reasonably determined that she waived the right and she had enough time to find an attorney if she had wanted one. Thank you, Your Honors. Thank you. Your Honor, I'll start where opposing counsel left off. The record is clear that Miss Gomez believed herself to be represented by counsel on January 30th, nearly a month before the ultimate removal hearing. The court asked her, did you hire an attorney? And she responded, the attorney was sent by a pro bono organization. She did not say no. And this relates back to her original confusion and response to her notification of her rights that she did not have the means to hire an attorney. And again, relates to her dependence throughout proceedings at the insistence of the court on the pro bono legal services of the Esperanza organization inside the detention center. And and and I think that takes us back to the validity of the initial waiver. I would note that it was the court that found that the proceedings needed to be continued after Miss Gomez denied the charges of removability. And the court said to her after she said she did not have the means to hire counsel, you should at least consult with Esperanza regarding this material. The court depended on the existence of pro bono legal services. Miss Gomez diligently sought the assistance of pro bono legal services. And once she indicated that she believed herself to be represented by counsel, Hernandez Gill requires the court to required the immigration court to give that attorney a reasonable opportunity to participate in the proceedings. No steps whatsoever were taken to confirm whether the attorney mentioned in the correspondence did intend to represent Miss Gomez when that attorney might be available for another hearing. And for those reasons, Miss Gomez's right to counsel was not respected. It clearly resulted in prejudice, although she's not required to demonstrate prejudice. And this court should remand the proceedings back to the agency so that she can be represented by counsel in pursuing her applications. Thank you. Thank you. Both sides. This case is submitted.
judges: FRIEDLAND, FORREST, DESAI